# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

RYAN J. STERBA,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 16-CV-2001-CJW

**MEMORANDUM OPIUM AND ORDER**

_____

    Claimant, Ryan J. Sterba (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contended he became disabled on July 1, 2010, because of a seizure disorder and migraine headaches. AR 233 & 237.[1] The Administrative Law Judge (ALJ) found claimant had severe impairments of migraine headaches and pervasive developmental disorder, but found his seizure disorder was not severe because it was controlled by medical treatment. AR 19. The ALJ found claimant had the residual functional capacity to perform a full range of work at all exertional levels, but would be limited to simple and routine tasks with very few workplace changes. AR 20. Claimant argues the ALJ erred in determining his residual functional capacity.

    For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] "AR" refers to the administrative record below.

# I. BACKGROUND

Claimant was born in 1976 and was 37 years old at the time of the ALJ's decision. AR 36, 233. Mr. Sterba obtained his high school diploma and attended special education. AR 36, 238, 329, 401. Claimant had past relevant work as a cleaner, food preparation worker, sandblasting operator, warehouse worker, and production worker. AR 24.

On August 3, 2012, claimant filed his application for disability insurance benefits. AR 16, 163-69. On October 9, 2012, the Commissioner denied claimant's application. AR 83-86. On January 24, 2013, the Commissioner denied claimant's request for reconsideration. AR 89-92. On April 9, 2014, ALJ Eric S. Basse held a hearing at which claimant, claimant's mother, and a vocational expert testified. AR 33-70. On June 11, 2014, the ALJ found claimant was not disabled. AR 16-25. On November 5, 2015, the Appeals Council affirmed the ALJ's finding. AR 1-6. The ALJ's decision thus became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On January 5, 2016, claimant filed a complaint in this court. Doc. 3. The parties have briefed the issues and on August 3, 2016, this case was deemed fully submitted. Doc. 14. On the same day, the Honorable Linda R. Reade, United States District Court Judge, referred this case to me for a Report and Recommendation. On August 29, 2016, with the consent of the parties, the Honorable Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 15.

# II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. *Id.* "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.*

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having the ability and aptitude necessary to perform most jobs. 20 C.F.R. § 404.1521(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work

situations; and (6) dealing with changes in a routine work setting." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted). The RFC is based on all relevant medical and other evidence. *Id*. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id*. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id*.

Fifth, if the claimant's RFC, as determined in step four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. *Id*. The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584,

591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id*. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled.

### III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in his written decision.

At step one, the ALJ found claimant had not continuously worked at a substantial gainful activity level since July 1, 2010. AR 18.

At step two, the ALJ determined claimant had the following severe impairments: "migraine headaches, and pervasive developmental disorder." AR 18. The ALJ found claimant had a seizure disorder, but found that it was not severe because it was controlled by medical treatment. AR 19. Nevertheless, the ALJ stated he took this non-severe impairment into account when assessing claimant's residual functional capacity. *Id*.

At step three, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. AR 19. The ALJ specifically

5

considered listing 12.10 for mental impairment, but found it did not apply because claimant had only mild restrictions on his daily living. *Id*.

At step four, the ALJ determined claimant's RFC. The ALJ found:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he would be limited to simple and routine tasks with very few workplace changes. In other words, a job that is very repetitive, routine, and simple with an SVP of 2. He could have occasional contact with the public, co-workers, and supervisors. With respect to co-workers, he could not work as part of a team or perform a job with any long-term teamwork, but he could work together with someone to accomplish a task.

AR 20. Based on this RFC assessment, the ALJ determined claimant was capable of performing past relevant work as a "Cleaner, Food Preparation Worker, Sandblasting Operator, Warehouse Worker, and Production Worker." AR 24. Accordingly, the ALJ did not reach step five.

## IV.  DISCUSSION

Claimant argues the ALJ's residual functional capacity assessment was flawed for four reasons:

1. The ALJ failed to find claimant's cognitive impairment was a severe impairment. Doc. 12, at 3-6.

2. The ALJ failed to make a function-by-function assessment of claimant's RFC. Doc. 12, at 6-9.

3. The ALJ failed to fully and fairly develop the record regarding the vocational significance of claimant's cognitive impairment. Doc. 12, at 9-11.

4. The RFC is not supported by substantial medical evidence where the consultative examiner and state agency psychological consultants did

6

> not review any evidence related to claimant's cognitive impairment.
> Doc. 12, at 11-13.

The Court will address these arguments separately below.

### A. *The Substantial Evidence Standard*

This Court must affirm the Commissioner's decision "if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a decision." *Wright*, 542 F.3d at 852 (quotation and citation omitted). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). A court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). A court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall

evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, a court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). A court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). A court may not reverse the Commissioner's decision "simply because some evidenced may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") (internal citation omitted).

### B. *Whether the ALJ erred in finding claimant's cognitive impairment was not severe*

Claimant argues that the ALJ erred in failing to find that claimant's cognitive impairment was severe. Doc. 12, at 3-6. Claimant relies on an October 28, 2010, cognitive assessment evaluation by Dr. Robert Jones. *Id.*, at 4-5. Claimant notes that the ALJ "briefly" discussed Dr. Jones' report and "implicitly found [claimant's]

cognitive impairment was not a severe impairment. *Id.*, at 5-6. Claimant faults the ALJ for not expressly indicating he considered Listing 12.02 (organic mental disorder).

Claimant's argument is without merit. "At step two, the claimant bears the burden of establishing that she has a severe impairment that significantly limits her physical or mental ability to do basic work activities." *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996). *See Kirby*, 500 F.3d at 707-08 (holding that it is a claimant's burden to show that impairment is severe; if impairment has no more than minimal effect on a claimant's ability to work, it does not qualify as severe). Other than reciting the medical record and the ALJ's finding in his brief, claimant failed to articulate what error he alleges the ALJ made. Rather, claimant's brief does little more than assert his disagreement with the ALJ's decision. Claimant generally refers to a "cognitive impairment," but claimant did not allege he was disabled because of a cognitive impairment; rather, he alleged he was disabled because of a seizure disorder and migraine headaches. AR 237. The ALJ found claimant's seizures had been controlled through surgery and medication, and claimant does not contest that finding. The legal authority claimant cites is nothing more than a recitation of the legal standard, with no application of that law to the facts of this case to show how the ALJ allegedly failed to comply with the legal standard. Claimant's brief fails to provide the Court with any guidance as to what claimant believes the ALJ did wrong and what legal authority exists to support an argument that the ALJ erred.

Setting aside the deficiencies in claimant's brief, the Court's own evaluation of the record shows there is substantial evidence in the record as a whole to support the ALJ's conclusion that claimant had severe impairments of migraine headaches and pervasive developmental disorder, but no other severe impairments. AR 18. The ALJ reviewed the medical evidence, including Dr. Jones' reports. AR 19-24. The ALJ analyzed whether claimant's mental impairment met or medically equaled the criteria of listing

12.10 for autistic disorder and other pervasive developmental disorders. AR 19-20. The ALJ concluded that claimant did not meet the criteria in paragraph B of that listing. *Id*. Listing 12.10 consists of "paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations)," as well as some "additional functional criteria (paragraph C criteria)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. As the ALJ explained:

> To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

AR 19. The ALJ concluded claimant did not meet the criteria set out in paragraph B.

Specifically, the ALJ found claimant had only mild restrictions in activities of daily living. AR 19. The record supports this conclusion. Claimant lived on his own for fifteen years. AR 49, 52. He performed yard work and repairs around the house, mowed the yard, cleaned dishes and laundry, and performed other household chores. AR 50, 214-15. Although claimant implies he was not cleared to drive (Doc. 12, at 4), while that was true for a time, it is no longer the case (AR 315, 435).

The ALJ found claimant had moderate difficulties in social functioning. AR 19. Again, the record contains substantial evidence to support the ALJ's findings. The ALJ noted that during a consultative examination, it was noted that claimant was socially inappropriate when he attempted to play with two small children. *Id*. The incident occurred when claimant showed up early for the examination and got on the floor of the waiting room to play with two small children even though he did not know them or their parents. AR 328. The examiner noted that "[o]ffice staff observed this and said it appeared to be quite inappropriate, although he didn't do or say anything harmful." *Id*. The examiner concluded claimant had "poor social boundaries." AR 329. In contrast to

that one incident, the ALJ found that claimant shopped in stores, engaged in social activities, spent time with family and friends, and was involved in church and the Lions Club. AR 19. The record supports these findings. AR 48-51; 216. Indeed, claimant testified at the hearing that he had "[n]o problems at all" in "dealing with the people [at his workplace] or getting along with anyone or anything like that." AR 62. Claimant testified that the only problems he had when working as a cashier was not in dealing with customers, but in dealing with technical glitches in the cash register. AR 62-63. Claimant indicated that he got along "very well" with authority figures. AR 218. *See* AR 333 (finding claimant scored "not significantly limited" or "moderately limited" on all social interaction functions).

With regard to concentration, persistence and pace, the ALJ found claimant had moderate difficulties. AR 19. The ALJ noted that claimant testified that his medications affected his memory and ability to concentrate. *Id*. The ALJ noted, however, that claimant stated he could follow both written and spoken instructions. *Id*. The record supports this finding. Claimant indicated that he "never" had difficulty concentrating. AR 394. Claimant indicated that he can pay attention for "quite a while," finishes what he starts, is "very good" at following written instructions, and "good" at following spoken instructions. AR 217. Claimant also indicated that he is "good" at handling stress and "pretty good" at handling changes in routine. AR 218. Further, although claimant had some difficulty with memory while on high doses of a particular medication (Tompomax), adjustment of his dosage eliminated that side effect. AR 310. Claimant reported no mental disorder or poor memory. AR 313. Claimant indicated he was "not at all bothered" by memory difficulties. AR 395. Claimant was found to be of average intelligence and cleared to drive a vehicle. AR 314-15. The Court must treat claimant's description of his own abilities with some caution; at least one examiner opined that claimant "seemed to grossly under-estimate any cognitive or emotional difficulties he is

11

having" and "had trouble with some of the tasks requiring concentration during the evaluation." AR 329-30. In the end, however, even this examiner concluded claimant had "no significant impairment" in his "ability to understand instruction, procedures and location," and had only "some minor evidence of having concentration problems." AR 330. *See also* AR 332 (finding claimant scored "not significantly limited" on seven categories of memory, concentration and persistence factors, and "moderately limited" on four of the categories).

The ALJ found there were no episodes of decompensation. AR 19. The Court's independent review of the entire record supports this conclusion, and claimant has not pointed to any evidence to the contrary.

Claimant notes that the ALJ only expressly addressed Listing 12.10 and not Listing 12.02 relating to organic mental disorders. Doc. 12, at 6. Presumably, claimant is arguing that was error, although, he does not explicitly say so. Assuming that is claimant's argument, the Court finds no merit in it. When an ALJ fails to address a specific listing, the failure to do so is harmless if the record supports the overall conclusion. *Pepper v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). Listing 12.02 requires the same "paragraph B" criteria as does Listing 12.10. Accordingly, any error arising from the ALJ's failure to expressly refer to Listing 12.02 was harmless because the ALJ had already determined claimant did not satisfy the "paragraph B" criteria of the listings. Accordingly, the ALJ's failure to specifically address Listing 12.02, even if in error, was harmless. *See Hanson v. Colvin*, CV No. 14-2024, 2015 WL 773334, at *5 (W.D. Ark. Feb. 24, 2015) (finding failure to address listing harmless error where claimant failed to meet the same paragraph B criteria of another listing); *Lindberg v. Comm'r of Soc. Sec.*, Civ. No. 11–2396 (PJS/JJG), 2012 WL 3288642, at *12 (D. Minn. July 26, 2012) (same).

The Commissioner also points out that claimant failed to address the definition or capsule requirement that claimants must meet (the "capsule requirement") in addition to the requirements of subsections A, B, or C. Doc. 13, at 7. The introductory or definitional section of Listing 12.02 requires claimant demonstrate "the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. The Commissioner identifies evidence that shows claimant could not meet this capsule requirement. Doc. 13, at 7. An MRI of claimant's brain showed no changes. AR 402. Claimant's only alleged symptoms of headaches and associated nausea, not loss of functional abilities, were in connection with a head injury when he fell off a horse in 2009. *Id*. This, too, is evidence that if the ALJ erred in not explicitly addressing Listing 12.02, it was harmless.

Finally, the Court notes that the ALJ considered the functional effects of claimant's cognitive impairments, whether they were labeled "cognitive disorder" as claimant describes them, or as "pervasive developmental disorder" as the ALJ labeled them. The ALJ thoroughly considered and gave "great weight" to the results of the consultative examination by Dr. Paul Conditt (AR 22, 327-31), and gave "some weight" to the opinion of neuropsychological consultant, Dr. Robert D. Jones (AR 22, 401-403). "[T]he diagnosis has minor significance one way or the other . . . . [T]he dispositive question remains whether [claimant's] functioning in various areas is markedly impaired, not what one doctor or another labels his disorder." *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730-31 (8th Cir. 2003). In this case, the ALJ considered the functional limitations resulting from claimant's mental impairments. Substantial evidence in the record as a whole supports the ALJ's findings of claimant's severe impairments and his conclusion that claimant did not have additional severe impairments.

### C. *Whether the ALJ erred in failing to make a function-by-function assessment of claimant's RFC.*

Claimant argues the ALJ erred by failing to translate "psychological test results into vocational limitations and perform[ ] a function-by-function assessment" of claimant's residual functional capacity. Doc. 12, at 9. As a factual basis for this argument, claimant relies entirely on an evaluation by Dr. Jones. Doc. 12, at 6-8.

When determining the RFC, an ALJ must perform a function-by-function analysis. *See* SSR 96–8p, 1996 WL 374184 (July 2, 1996). An ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." *Id*. It is not, however, reversible error for an ALJ not to mention all functional areas. *See Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003) (holding no violation of SSR 96–8p where ALJ made explicit findings in the residual functional capacity assessment, despite not making explicit findings with respect to sitting, standing and walking); *see also Knox v. Astrue*, 327 Fed. App'x 652, 657 (7th Cir. 2009) ("Although the RFC assessment is a function-by-function assessment, . . . the expression of a claimant's RFC need not be articulated function-by-function.") (internal quotation marks omitted).

Although claimant argues the ALJ did not properly perform a function-by-function assessment of claimant's RFC, the ALJ considered the medical evidence, observations of doctors, and claimant's own testimony and description of his functional limitations in determining claimant's RFC. *See Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ conducted a detailed analysis of the record describing why claimant could perform a full range of work with specific nonexertional limitations. This included a review of the medical evidence, claimant's testimony, statements of medical resources, and all other evidence submitted. AR 20-24. *See Garrison v. Astrue*, No.4:11cv 1503

FRB, 2012 WL 4336202, at *15 (E.D. Mo. Sept. 21, 2012) (finding the ALJ conducted the required function-by-function assessment). As discussed above, the medical evidence supports the ALJ's determination, and the ALJ thoroughly considered and discussed this evidence in rendering his decision. The ALJ's determination is both fully supported and sufficiently explained. Thus, the Court finds the ALJ conducted a proper assessment of claimant's RFC.

Claimant's reliance on a single examination by Dr. Jones is, in any event, misplaced. Claimant points to tests Dr. Jones performed, the results of which showed claimant was "impaired" or "borderline impaired" with regard to "[d]elayed recall for a complex geometric figure," "[c]opying of a complex geometric figure," "[j]udgment of spatial information and matching of variably oriented lines," "[v]erbal abstract reasoning," "[n]aming to confrontation," and "[a]ssociative verbal fluency." AR 402.[2] Claimant then relies on a handbook Dr. Jones never cited or relied on to convert Dr. Jones' findings into percentages of the population who allegedly possess these limitations. Doc. 12, at 7-8. This is not evidence in the record. This Court is in no position to determine the reliability of this extra-record authority, and claimant produced no evidence establishing its reliability. Furthermore, the ALJ's RFC assessment adequately addressed the areas of impairment Dr. Jones identified. The ALJ limited claimant to "simple and routine tasks with very few workplace changes." AR 20. The ALJ found claimant could perform a job that is "very repetitive, routine, and simple with an SVP of 2 . . . [with] occasional contact with the public, co-workers, and supervisors." *Id*.

Accordingly, the Court finds the ALJ did not err because he did perform a proper function-by-function assessment of claimant's RFC.

---

[2] Claimant engages in hyperbole when he argues he had "limitations in a dozen areas." Doc. 12, at 8-9. These number seven.

***D. Whether the ALJ erred in failing to fully develop the record regarding the vocational significance of claimant's cognitive impairment***

Claimant argues the ALJ erred in failing to fully develop the record of claimant's functional limitations. Doc. 12, at 9-11. Relying on Dr. Jones' single examination, and citing Wikipedia for authority, claimant argues "[t]he ALJ should have obtained medical expert testimony to explain the complicated medical terminology and identify the practical consequences of the psychological testing." Doc. 12, at 10-11.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (internal citation omitted). The ALJ's duty exists even when an attorney represents a claimant. *Id.* "There is no bright line test for determining when the [Commissioner] has … failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). Claimant "bears a heavy burden in showing the record has been inadequately developed." *Combs v. Astrue*, 243 Fed. App'x 200, 204 (8th Cir. 2007). He "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Id*. *See also Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001) (holding "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"; ALJ may issue decision without obtaining additional evidence if existing evidence provides sufficient basis for decision (internal quotation marks and citations omitted)).

Claimant's assertion that the record before the ALJ was inadequately developed because it did not contain expert testimony to explain the practical consequences of Dr. Jones' examination is incorrect. An ALJ is not required to seek additional, independent

expert medical testimony if the record is sufficient. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, including the opinion of several physicians, was sufficient for the ALJ to arrive at an RFC assessment without additional medical expert testimony). The record in this case contains assessments of state agency medical consultants as to claimant's limitations. AR 328-31, 401-403. An ALJ need not obtain medical expert testimony where, as here, the record contains sufficient information for an RFC assessment. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (the ALJ is required to order further medical examinations only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

Accordingly, the Court rejects the contention that the ALJ failed to adequately develop the record.

### E. Whether the ALJ erred in assessing claimant's RFC when he relied on opinions of the consultative examiner and state agency psychological consultants

Claimant argues the ALJ erred in reaching claimant's RFC assessment by relying on the consultative examiner and the state agency psychological consultants. Doc. 12, at 11-13. This is, really, an extension of claimant's last argument: he argues "[t]he ALJ's duty to fully develop the record includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue." Doc. 12, at 11. Claimant relies for authority to support this proposition on *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), and *Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004) (citing *Nevland*).

As the Commissioner correctly pointed out in her brief, claimant's argument is misplaced. The ALJ denied claimant's application at step four, and never reached step five. The Eighth Circuit Court of Appeals has explained:

> But as we recognized in *Eichelberger v. Barnhart* [,390 F.3d 584 (8th Cir. 2004], *Nevland* addressed the evidence necessary to satisfy an ALJ's burden of proof at step five in the disability analysis; *Nevland* does not preclude the ALJ's reliance on a reviewing physician's report at step four when the burden is on the claimant to establish an inability to do past relevant work. 390 F.3d 584, 591 (8th Cir. 2004); *see also Masterson [v. Barnhart]*, 363 F.3d [731,] 737–39 [(8th Cir. 2004)] (holding that the ALJ properly relied on the assessments of a nonexamining physician, and not claimant's treating physicians, in determining the RFC at step four). "It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment." *Harris [v. Barnhart]*, 356 F.3d [926,] 931 [(8th Cir. 2004)].

*Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007). The Commissioner also points out that the Social Security Administration published a rule change that emphasized that "the only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC, age, education, and work experience. That shift does not place on us the burden of proving RFC." *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51153-01, at *51155, 2003 WL 22001943 (Aug. 26, 2003).

The other authority claimant cites provides no firmer support. Claimant cites *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995), for the proposition that "[i]f there is no such evidence, the ALJ's decision cannot be said to be supported by substantial evidence." Although those exact words do appear in the opinion, the *Anderson* case was, unlike this one, decided at step five, where the burden shifts to the Commissioner. Claimant asserts that "recently, this Court noted that ***ordinarily*** work-related limitations from a treating or examining source was required." Doc. 12, at 12 (emphasis claimant's) (citing *Brewer-Kite v. Colvin*, 959 F. Supp. 2d 1176, 1188 (S.D. Iowa 2013)). First, that was not a decision of this Court. Second, that decision does not support the proposition for which claimant cites it. In *Brewer-Kite*, the Court found the ALJ erred

18

because the ALJ ordinarily should give significant weight to a treating physician's opinion, which he did not do. 959 F. Supp. 2d at 1188-89. That case did not involve the question here of whether an ALJ may rely on non-examining consultative opinions and other medical evidence at step four to determine a claimant's RFC. Finally, claimant's citation of a decision by this Court, *Mann v. Colvin*, 100 F. Supp. 3d 710, 722 (N.D. Iowa 2015), while more on point, is not helpful because, again, that case was decided at step five, not step four. In any event, as claimant notes, this Court held in *Mann* that even at step five, an ALJ may determine a claimant's ability to work in the absence of evidence from a treating or examining physician so long as other medical evidence in the record supports the finding.

The ALJ in this case reviewed and relied upon medical evidence from claimant's treating doctors (AR 21-22) and the consultative opinions of Drs. Jones and Conditt (AR 22). The ALJ considered, but gave little weight to, a November 2012 medical opinion by Dr. Troy Buchholz (AR 22-23) because his opinion was inconsistent with the objective medical evidence that demonstrated that medical treatment had adequately addressed claimant's seizures.[3] AR 22-23. Similarly, the ALJ considered, but gave little weight to, a medical source statement by Dr. Ameer Almullahassani, which was singularly uninformative and, in any event, determined claimant's headaches were not severe and that claimant had a good prognosis. AR 23. The ALJ recognized that he was relying on non-examining consultative physicians whose "opinions do not as a general matter deserve as much weight as those of examining or treating physicians." AR 23. He concluded, however, that "their opinions do deserve significant weight in the current instance, particularly because in a case like this there exist a number of other reasons to

---

[3] Claimant does not contest the weight the ALJ afforded this opinion.

reach similar conclusions." *Id*. Principle among these is the fact that the evidence clearly showed "claimant was able to maintain employment for fourteen consecutive years, live alone, and independently perform all of his activities of daily living." AR 22. For these reasons, the Court finds that the ALJ's reliance on the consultative physician's opinions, together with the rest of the evidence, fell within the acceptable zone of choice where this Court will not disturb his conclusion upon review.

## *V. CONCLUSION*

After a thorough review of the entire record, the Court concludes there is substantial evidence in the record to support the Commissioner's decision. Accordingly, the Court **affirms** the decision of the ALJ.

**IT IS SO ORDERED** this 8th day of March, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa